Pettengell, P. J.
The plaintiff, a twelve year old boy, sues to recover for a dog bite. The declaration is in two *7 counts, one alleging that the defendant .was the owner of the dog and the other that he was the keeper.
There was evidence that on the day in question the plaintiff, a boy scout in uniform, went with another boy, about the same age, also a boy scout in uniform, to the other boy’s home to get newspapers during a drive for “scrap”, then being carried on by the Boy Scouts. They entered the house and were picking up newspapers on the back porch, when a dog belonging to the defendant, who was visiting the house, ’rushed into the room and bit the plaintiff. There was a finding for the plaintiff.
The defendant appeals to this Division, alleging error in the denial of three requests for ruling, as follows:
“1. The evidence if (sic) insufficient as matter of law to warrant a finding for the plaintiff.
“2. If the plaintiff went upon the premises in question for the purpose of collecting materials for the scrap drive, he does not as a matter of law have the status of an invitee upon the said premises.
“5. The plaintiff was committing a tort if he picked up papers that did not belong to him, without permission.”
The defendant’s contention is that the plaintiff was a trespasser and that his act of picking up newspapers was a tort; he having no right to be on the premises or to take possession of the property of another found there.
The trial judge made the following “Findings of fact and Rulings of Law”:
“The plaintiff and one Melvin Swartz were Boy Scouts. At the invitation of Melvin the plaintiff went to the residence of Jack Swartz, who was the father of Melvin, to get some old newspapers during a drive for ‘ scrap ’ which was being carried on by the Boy Scouts. Both were in uniform. While the boys were engaged in picking up the newspapers which were on the back porch of the house the screen door was opened and a *8 dog owned by the defendant Saul Swartz which was on the premises came out, jumped on the plaintiff and bit him in the groin. The plaintiff previous to being attacked did nothing to tease, torment or abuse the dog which apparently jumped upon him when he was engaged in picking up waste paper at the invitation of the son of the owner of the premises. I am unable to find who was the owner of the newspapers but I find that they were in the custody of Melvin Swartz who invited the plaintiff to the premises to help him get the papers.
”1 deny the first of the rulings of law requested by the defendant.
“I deny the second as inapplicable upon the facts found. 1 find that the plaintiff went upon the premises with one Melvin Swartz who was the son of the owner, a nephew of the defendant and an occupant of the premises. The two boys went there with the common purpose of getting some waste paper concerning whose ownership there is no direct evidence but which I find on the evidence was in control of the said Melvin Swartz.
“1 give the third and fourth rulings requested.
“I deny the fifth as inapplicable. See No. 2 and findings of fact.”
The plaintiff’s first request, disregarding the apparent typographical error, is that the evidence is insufficient as matter of law to warrant a finding for the plaintiff. This is not the usual form of a request upon the sufficiency of the evidence to warrant a finding, which means evidence to warrant a finding of fact. This request calls for a decision that the evidence is so insufficient that as matter of law the plaintiff cannot recover. It raises the same issue of law which arises in a case tried to a jury when at the close of the evidence the defendant moves for a directed verdict. Such a motion can be allowed ‘ ‘ only when no other decision is legally possible”. Hicks v. H. B. Church Truck Service Co., 259 Mass. 272, at 276, 277. The first ruling requested could not be given in this case if upon the evidence a find *9 ing for the plaintiff was permissible on any ground. Milmore v. Landau, 307 Mass. 589, at 590.
The defendant’s contentions are based upon his theory that the plaintiff was a trespasser and was committing a trespass in picking up papers which did not belong to him. He argues strongly that the boy who lived in the house had no authority to invite the plaintiff to enter the premises or to pick up paper when once there. He contends that a boy, in his own home, under these circumstances could have no such authority; that only his father could authorize such acts.
In this we think that the defendant has a wrong idea of the law. In his philosophy there are only two groups to be considered, invitees and trespassers, and he definitely and finally puts the plaintiff in the latter class. There is, however, a third class which he has overlooked.
In Comeau v. Comeau, 285 Mass. 578, the Supreme Judicial Court said, at page 581,
“The words ‘invitor’ and ‘invitee’ have been used often in the discussions of actions for negligence where the plaintiff resorts to premises of the defendant used for the transaction of business. The defence is frequently interposed that the plaintiff is a licensee and not an invitee with respect to the purpose or intent which causes him to be upon the premises of the defendant. Thus it has become common to state the test of the right to recover in actions for negligence to be that an invitee may, and a licensee may not prevail provided other essential elements of the plaintiff’s case are made out. In the case of such an invitor and invitee, there must be some benefit to the former to render him liable for failure to exercise ordinary care, or some mutuality of business interest. The words ‘invitor’ and ‘invitee’ in that sense, however, are not pertinent to the underlying principles which govern the relations of guest and host. These relations are not commercial. They do not rest upon conceptions or advantage or disadvantage arising out of contract *10 or trade, or anticipated material advantages to one or the other. They are dependent upon social considerations. The guest for the time being becomes a member of the family of the host, entitled to the protections thrown about the household. He cannot at the same time stand upon the strictly business rights of one engaging in commercial transactions.
‘‘ The principle to be deduced from our decisions and those of other jurisdictions, and resting upon sound reason as well as upon authority, in our opinion may be stated as follows: A guest enjoying by invitation unrecompensed hospitality at the house of another must be presumed to accept such generous entertainment with an understanding that he accommodates himself to the conditions of his host. He cannot ask for better things than the latter possesses. It is difficult to import into such relationship a duty on the part of the host to make improvements or reconstruction because thereby his home may be more convenient or more safe for those accepting his gracious hospitality. The guest must accept the premises as he finds them.”
In this case under consideration it is apparent that the plaintiff went to the house of his companion Boy Scout as the latter’s social guest, and not as an “invitee” in the commercial sense.
In the Restatement of the Law of Torts, Vol. I, Section 167, under the title Privilege to Enter Land, it is said, at page 404,
“So, too, it may be assumed that a member of the possessor’s household residing with him upon the land has the possessor’s permission to invite upon the land all such persons as are customarily regarded as proper visitors. ’ ’
Thus it would seem» that the plaintiff, although not an “invitee” in the strict sense, may have been properly upon the premises as a guest, being present upon an invitation from the son of the house.
*11 The Supreme Judicial Court has already passed upon some features of this ease. In Riley v. Harris, 177 Mass. 163, a dog case, the plaintiff, a friend of servants of the defendant, was with another on her way to call upon them socially. The visitors were approaching the back door of the house when the defendant’s dog rushed out and bit the plaintiff. Holmes C. J. said at page 164, . .
“It does not seem to us to need argument that the plaintiff was not a trespasser. ‘ There are cases . . . where the law will imply a license . . . from the usages of the community. Thus it has been held that the entry upon another’s close, or into his house, at usual and reasonable hours, and in a customary manner, for any of the common purposes of life cannot be regarded as a trespass.’ Lakin v. Ames, 10 Cush. 198, 200. Hawks v. Locke, 139 Mass. 205, 207. The private way upon which the plaintiff seems to have 'been travelling imported a license to approach the house for a social purpose familiar to everyone according to a practice common in this part of the world.”
Irrespective of the present tolerance with which canvassers are received in their visits to homes upon such lowly errands as the collection of “scrap”, or of the general welcome attitude of the public toward Boy Scouts endeavoring to “do their bit” by collecting “scrap” for the war effort, there is behind the defendant’s contention a legal point of view which is entirely at odds with our New England philosophy of family life. It is something of a shock to hear it argued that the children whom our children bring home from school, even if personally unknown, and wholly unexpected, are in legal contemplation trespassers because not formally admitted. The knowledge that actually they have the status of guests and the protection of the family circle is enheartening and welcome. It is like passing from the chill of cold, barren consideration to the warmth of a decision of generous hospitality.
*12 Upon the law and the evidence, the first ruling requested could not have been given. What has been said, together with the trial judge’s findings of fact, justifies the denial of the second requested ruling.
With regard to the fifth requested ruling, there was no evidence that the plaintiff intended himself to remove the paper picked up from the premises. It does not appear that any decision about the disposition of the papers had been made when the dog appeared. It may be even that parental authority was to be secured before the matter of disposition was reached. The issue before the trial judge was whether the mere picking up of a piece of paper constituted a tort. In many homes child visitors gleefully pick up the “funnies” sometimes scattered on the floor. It does not seem likely that there is any legal possibility of their being classed as tortfeasors. The implied license which makes their entrance lawful covers also their reasonable and customary conduct. There was no error in the denial of the requested ruling.
No prejudicial error appearing, the report is to be dismissed.